# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DONALD FRIEDMAN,       )
                                  )
         **Plaintiff,**    )
                                  )
       **v.**                     )          **Civil Case No. 06-2125 (RJL)**
                                  )
**UNITED STATES**        )
**SECRET SERVICE,**       )          **FILED**
                                  )
         **Defendant.**   )          **OCT 2·0 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

October 19, 2017 [Dkts. ## 96, 106]

This matter is before the Court on Defendant's Second Renewed Motion for Summary Judgment [Dkt. # 96]. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART without prejudice.

## BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. In his September 1, 2006 FOIA request to the United States Secret Service ("Secret Service"), a component of the United States Department of Homeland Security ("DHS"), plaintiff sought the following information:

> [A]ny and all files, records, documents, information, photos, research materials (incl. results), and purchasing and any other contract-related information related to or referring to any U.S. Secret Service development of, acquisition of, installation of, deployment of, testing of, research related to, and/or investigation or evaluation of the capabilities, properties, and/or effects of any:

1) directed energy weapons or systems (incl. any and all parts or components [sic] thereof); and/or

2) directed energy devices or systems (incl. any and all parts or components [sic] thereof); and/or

3) electromagnetic radiation-emitting devices or systems (incl. any and all parts or componants [sic] thereof) which are capable of causing any injury or perception of physical pain in any person who is hit or struck by the device's or system's emissions.

First Am. Compl. [Dkt. # 8], Ex. A, Letter from Plaintiff to FOIA/PA Manager, Secret Service (Sept. 1, 2006), at 1–2 [Dkt. # 8-1].[1] The Secret Service construed the request as one "for any documents concerning directed energy weapons/systems or electromagnetic radiation devices/systems." Def.'s Mem. Supp. Mot. Summ. J. & Opp'n to Pl.'s Mot. Compel [Dkt. # 40], Ex. A, Decl. of Craig W. Ulmer ¶ 4 [Dkt. # 40-2] ("Ulmer Decl. I"). The Secret Service ultimately released 218 pages in full or in part and withheld 369 pages in full, relying on Exemptions 1, 2, 4, 5, 6, 7(C), and 7(E). *Id.* ¶ 33; *see id.*, Ex. V, Letter from Craig W. Ulmer, Special Agent In Charge, FOIA & Privacy Act Branch, Secret Service, to Plaintiff (Oct. 24, 2007), at 1 [Dkt. # 40-2]; Def.'s Mem. Supp. Renewed Mot. Summ. J. [Dkt. # 72] ("Def.'s Renewed Mem."), Ex. 10, Third Decl. of Craig W. Ulmer ¶ 4 [Dkt. # 72-3] ("Ulmer Decl. III").

The judge previously assigned to this action denied Defendant's Motion for Summary Judgment [Dkt. # 40] without prejudice, and granted in part and denied in part

---

[1] In subsequent correspondence, plaintiff clarified certain terms but did not substantially modify the request. *See* First Am. Compl., Ex. B, Letter from Plaintiff to FOIA/PA Manager, Secret Service (Sept. 9, 2006) [Dkt. # 8-1]; *id.*, Ex. C., Letter from Plaintiff to FOIA/PA Manager, Secret Service (Sept. 29, 2006) [Dkt. # 8-1]; Def.'s Mem. Supp. Mot. Summ. J. & Opp'n to Pl.'s Mot. Compel [Dkt. # 40], Ex. A, Decl. of Craig W. Ulmer ¶¶ 6, 8 [Dkt. # 40-2] ("Ulmer Decl. I").

without prejudice Defendant's Renewed Motion for Summary Judgment [Dkt. # 72]. In its February 15, 2013 Memorandum Opinion and Order [Dkt. # 87], defendant was directed to file a renewed motion to address the following:

> (1) information withheld by the United States Secret Service under Exemptions 2, 6, 7(C), and 7(E); (2) information withheld by the United States Air Force under Exemptions 2, 6 and 7(C); (3) information withheld by the United States Navy under Exemption 6; (4) information withheld by the United States Department of Homeland Security under Exemption 6; (5) information withheld from the Raytheon records under Exemptions 2, 4, 6, 7(C), and 7(E); (6) information withheld by the United States Department of Justice, Office of Justice Programs, under Exemptions 6 and 7(E); and (7) information withheld from Defense Threat Reduction Agency records under Exemptions 6 and 7(C).

*Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262, 284 (D.D.C. 2013).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, this requires a district court, reviewing de novo an agency's decision to withhold responsive records, to find that "the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure under the FOIA." *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (alteration in original) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011)).

To satisfy that burden, an agency may submit affidavits of responsible agency officials, which are accorded substantial weight "in the typical national security FOIA case." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir.

3

2011) (quoting *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993)). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Id.* Provided that they are accordingly detailed, agency affidavits cannot "be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. Cent. Intelligence Agency*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Indeed, "[t]o successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

## ANALYSIS

### A. Exemptions

#### 1. Exemption 2

Exemption 2 protects from disclosure material that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Secret Service no longer relies on Exemptions 2 and 7(E) to withhold internal email addresses, choosing instead to rely on Exemption 7(C). *See* Def.'s Mem. Supp. Second Renewed Mot. Summ. J. [Dkt. # 96] ("Def.'s Second Renewed Mem."), Ex. A, Decl. of Brady J. Mills ¶¶ 6–8 [Dkt. # 96-2] ("Mills Decl."). In addition, the Secret Service withdraws its reliance on

Exemption 2 with respect to the Raytheon documents, and instead relies on Exemptions 4 and 7(E). *Id.* ¶¶ 11–12.

It appears, however, that the Air Force maintains its reliance on Exemption 2 to withhold "the e-mail addresses, login names, and passwords for military computer systems appearing in the records." Def.'s Renewed Mem., Ex. 5, Decl. of Carolyn Price [Dkt. # 72-3]. This position is untenable in light of the Supreme Court's decision in *Milner v. Department of the Navy*, which restricts application of Exemption 2 to "[a]n agency's . . . rules and practices dealing with employee relations or human resources." 562 U.S. 562, 570 (2011). With respect to the Air Force's reliance on Exemption 2, defendant's motion must be denied in part without prejudice.

2.    Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). For FOIA purposes, a trade secret is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities . . . that can be said to be the end product of either innovation or substantial effort." *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 563 n.9 (D.C. Cir. 2010) (alteration in original) (quoting *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1288 (D.C. Cir 1983)). "If the requested documents constitute 'trade secrets,' they are exempt from disclosure, and no further inquiry is necessary." *Pub. Citizen Health Research Grp.*, 704 F.2d at 1286. Where, however, the documents instead "constitute commercial or financial information," they are exempt from disclosure only if

5

they are also privileged or confidential. Commercial or financial matter is "confidential" where "disclosure would be likely either (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1331 (D.C. Cir. 2014) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992) (en banc)).

Among the responsive records were "six pages . . . that originated with the Raytheon Company ('Raytheon records')." Mills Decl. ¶ 9; *see* Def.'s Renewed Mem., Ex. 1, Second Decl. of Craig W. Ulmer ¶¶ 13–14 [Dkt. # 72-2] ("Ulmer Decl. II"). The Secret Service forwarded those records to Raytheon for its "determination regarding the proprietary nature" of certain information contained therein. Ulmer Decl. II, Ex. J, Letter from Craig W. Ulmer, Special Agent In Charge, FOIA & Privacy Act Branch, Secret Service, to Plaintiff (Sept. 15, 2008), at 1 [Dkt. # 72-2].

The Raytheon records were part of a "presentation . . . entitled 'Portable Active Denial Systems' (ADS)." Ulmer Decl. II, Ex. I, Letter from Thomas J. Finn, Counsel, Raytheon Missile Systems, to Emily Griesy, Commc'ns Ctr., FOIA & Privacy Act Branch, Secret Service (Sept. 12, 2008), at 1 [Dkt. # 72-2] ("Griesy Letter"). The Secret Service withheld one page in full under Exemptions 4 and 7(E) because it "contained a list of several of Raytheon's government customers, as well as a description of the particular types of Raytheon directed energy weapons that the listed customers had purchased or shown an interest in." Mills Decl. ¶ 15; *see* Griesy Letter 1 ("The customer list and the

6

capability/availability on these pages clearly reflect Raytheon trade secrets."). Raytheon marked the page "Raytheon Proprietary." Mills Decl. ¶ 15.

From two other pages of the Raytheon records, also marked "Raytheon Proprietary," the Secret Service "redacted five photographs." *Id.* ¶ 16. Two of the photographs "depict[ed] Raytheon products . . . specifically adapted for use by a federal agency (i.e., an agency other than the Secret Service) being used in two different settings." *Id.*; *see* Griesy Letter 1. Three photographs "depict[ed] three portable configurations of Raytheon's directed energy weapons that, according to Raytheon, were proprietary and had not been released to the public domain." Mills Decl. ¶ 16; *see* Griesy Letter 1. Raytheon explained its position as follows:

> Raytheon's directed energy solutions has competition not only within the directed energy arena, such as Northrop Grumman, but also in the conventional security systems arena. Raytheon faces direct competition with those currently selling conventional security systems, such as those offering electric fences, Taser weapons, [and] stun technology – these markets are significant markets offering significant potential to those companies [that] can develop unique applications and non-lethal, non-harmful security solutions. . . . [R]elease of Raytheon proprietary concepts and potential applications that have been disclosed to its potential customers under non-disclosure obligations would show competitors where Raytheon is investing its research and development money and the direction it is going in pursuing various markets. If competitors obtain this information, they will certainly gain an insight into Raytheon's customer solutions and market focus. Accordingly, disclosure of the photos depicting Raytheon's proprietary concepts and applications will cause actual and substantial financial harm to Raytheon.

Griesy Letter 2–3; *see* Mills Decl. ¶¶ 17–18. The Secret Service thus "was persuaded that these three pages of materials (i.e., the one withheld in full and the two partially released)

contained trade secrets and confidential commercial information that was exempt from disclosure under [E]xemption [4]." Mills Decl. ¶ 19.

Plaintiff fails to even mention defendant's reliance on Exemption 4, and this Court thus treats defendant's argument on this matter as conceded. *See, e.g., Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012) (where plaintiff's "opposition did not challenge the Secretary's proffered justifications under FOIA for having redacted [information,]" the arguments were "deemed conceded, and summary judgment [was] entered in favor of the Secretary"); *see also* LCvR7(h). Insofar as the Raytheon records list the company's government clients, describe the types of directed energy weapons that the clients had purchased or in which they had shown an interest, *see* Mills Decl. ¶ 15, and depict "proprietary applications and scenarios" of Raytheon's technology, Griesy Letter 2, the Court concludes that the information withheld includes trade secrets. And in light of Raytheon's stated commercial interest in the development and sale of its ADS technology, the Secret Service properly withholds the information under Exemption 4.

3.    Exemption 6[2]

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Exemption covers "detailed Government records on an individual which

---

[2] The Air Force, the Navy, and the Defense Threat Reduction Agency ("DTRA") originally relied upon Exemption 6 as a basis for withholding federal and non-federal employees' names. In its Second Renewed Motion for Summary Judgment, however, the Secret Service informed the Court that, in light of the passage of time since the original FOIA request, those referral agencies have "elected not to withhold names" under Exemption 6. Def.'s Second Renewed Mem. 6. As such, this Court need not address arguments regarding the Air Force, the Navy, and the DTRA's withholding of names under Exemption 6.

can be identified as applying to that individual," *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)), and includes such information as "place of birth, marriage or employment history, or other intimate details," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002). Even so, information need not be particularly intimate to merit protection under Exemption 6, which shields from disclosure "personal information, such as names and addresses," that, if released, "would create a palpable threat to privacy." *Prison Legal News*, 787 F.3d at 1147 (quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006)). Indeed, the exemption "has been construed broadly to cover essentially all information sought from Government records that 'appl[y] to a particular individual.'" *Pinson v. U.S. Dep't of Justice*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016) (alteration in original) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).

The statute "does not categorically exempt individuals' identities" from disclosure, however. *Judicial Watch*, 449 F.3d at 153. A court applying Exemption 6 "must first 'determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Prison Legal News*, 787 F.3d at 1147 (quoting *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009)). If a substantial privacy interest is implicated, "the court must balance the individual's right of privacy against the public['s] interest in disclosure." *Id.* "The focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005)

(quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Where this core purpose of FOIA is not served, disclosure is unwarranted.

     *i.*    *Secret Service*[3]

The Secret Service, relying on Exemption 6 alone, redacted from four pages of records the "names and phone numbers of non-governmental personnel, namely, contractor and research laboratory employees." Mills Decl. ¶ 23. These individuals apparently have "provide[d] security advice and information on potential security threats, and, at times, security equipment to the Secret Service and other government entities." Ulmer Decl. I ¶ 48.

According to its declarant, the Secret Service balanced the public's interest in disclosure of the information against the individuals' privacy interests and determined that the privacy interests prevailed. *See id.* ¶ 49. The declarant explained that, although "[i]t appears that there would be little or no public interest in the names and phone numbers of these individuals," the release of such information "in the public domain could cause [them] a personal risk due to their connection with the Secret Service and other government entities." *Id.* For example, "[t]hose . . . seeking to harm a Secret Service protectee or penetrate a Secret Service protected facility could . . . use these individuals to gain information regarding security procedures in place around these individuals and facilities." *Id.* The Secret Service therefore has protected "the names and phone numbers of

---

[3] In certain instances, the Secret Service relies on Exemption 6 in conjunction with Exemption 7(C) to withhold the same information. *See* Mills Decl. ¶ 24 (names and phone numbers of non-governmental employees); *id.* ¶ 10 (name of Raytheon employee); Ulmer Decl. I ¶ 48 (names of law enforcement personnel). The Court finds that this information is properly withheld under Exemption 7(C), as is discussed later in this Memorandum Opinion.

10

individuals employed by entities outside the Secret Service who have provided security advice or information on potential security threats." *Id.*

　　　*ii.　DHS/NPPD*

　　　The responsive records originating from the National Protection and Programs Directorate ("NPPD") were "nine pages . . . consist[ing] of an email invitation, registration form, proposed agenda, and transportation directions for a one-day conference entitled, 'Department of Homeland Security (DHS) Laster Eye Protection (LEP) and Emergency Technologies for Enforcement Workshop[,]' . . . hosted by the MITRE Corporation." Def.'s Second Renewed Mem., Ex. C, Decl. of Sandy Ford Page ¶ 4 [Dkt. # 96-2] ("Page Decl."). MITRE is "a not-for-profit Federally Funded Research and Development Center that assists the United States government with scientific research and analysis, systems development, and systems acquisition." *Id.* The purpose of the workshop was "to determine a complete set of [law enforcement]-specific requirements for developing prototype Laser Eye Protection devices for Law Enforcement personnel and sensor systems." *Id.*

　　　NPPD released four pages in full and released five pages in part. Def.'s Renewed Mem., Ex. 7, Decl. of Gayle S. Worthy ¶ 7 [Dkt. # 72-3]. From these records, NPPD withheld "the identities and contact information of two MITRE employees, one of whom is listed as the point of contact for 'questions regarding workshop content,' while the other is listed as administrative support for the conference (e.g., '[f]or registration and RSVP matters')." Page Decl. ¶ 5. In addition, NPPD redacted "two individuals' names, email addresses, direct-dial office phone numbers, and fax numbers that appear on five of the

11

nine responsive pages," as well as "[o]ne of the employee's cell phone number and classified-network email addresses . . . on two of the pages." *Id.*

### iii.    Department of Justice, Office of Justice Programs, National Institute of Justice

The Secret Service referred to the Office of Justice Programs ("OJP") a 35-page document that originated within the OJP, or more specifically, its National Institute of Justice ("NIJ"). *See* Ulmer Decl. I ¶ 25; Def.'s Renewed Mem., Ex. 9, Decl. of Dorothy A. Lee ¶¶ 2, 9 [Dkt. # 72-3] ("Lee Decl. I"). Two of these pages were part "of a power point presentation," Def.'s Second Renewed Mem., Ex. B, Second Decl. of Dorothy A. Lee ¶ 4 [Dkt. # 96-2] ("Lee Decl. II"), and contained "the administrative support point of contact for the presentation . . . and contact information including telephone numbers and email addresses for four Raytheon employees," *id.* ¶ 5. Among other information, *see id.* ¶¶ 7–8, NIJ redacted "names of a contractor and of a private company's personnel," *id.* ¶ 4.

The declarant explained that "OJP has generally withheld the names and contact information of individuals under [E]xemption 6 based on the broad construction of the language of [the] exemption," and "[b]ased on that premise, OJP determined that the privacy interests of the individuals outweigh any minimal public interest in disclosing information about them." *Id.* ¶ 6. In particular, according to the declarant, "disclosure of the [two] individuals' names and direct contact information could subject them to unsolicited communications and possible harassment, embarrassment and annoyance in the conduct of their official and private lives." *Id.* In addition, disclosure of their identities

12

"do[es] not reveal anything about the operations or activities of the government or shed light on OJP's performance of its statutory duties." *Id.*

### iv. *Analysis*

Plaintiff's only statement with regard to Exemption 6 is an unsupported assertion that "Exemption (b)(6) does not apply throughout Defendant's MSJ." Pl.'s Third Verified Mem. Opp'n to Def.'s Mot. Summ. J. 21 [Dkt. # 106] ("Pl.'s Opp'n"). Based on the Court's review of the supporting declarations, and absent any substantive objection from plaintiff, the Court concludes that the Secret Service, NPPD, and NIJ properly have withheld information under Exemption 6. *See, e.g., Judicial Watch*, 449 F.3d at 152–53 (withholding names and addresses of certain FDA personnel under Exemption 6); *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d 65, 82 (D.D.C. 2017) (withholding names of governmental officials and of "low-level contractor employees"); *Pinson v. U.S. Dep't of Justice*, 117 F. Supp. 3d 56, 83–85 (D.D.C. 2016) (withholding names and titles of FBI employees); *Cleveland v. United States*, 128 F. Supp. 3d 284, 300 (D.D.C. 2015) (withholding mobile phone number of government employee); *Sack v. Cent. Intelligence Agency*, 53 F. Supp. 3d 154, 172–74 (D.D.C. 2014) (withholding photographs of Department of Defense employees and contractor personnel taken with thermal camera for training purposes).

### 4. Exemption 7

#### i. *Law Enforcement Records*

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated

harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982) ("[T]he agency must demonstrate that release of the material would have one of the six results specified in the Act."). "To show that the disputed documents were 'compiled for law enforcement purposes,' the [agency] need only 'establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

### a. Secret Service

Although six Secret Service divisions conducted searches for records responsive to plaintiff's FOIA request, *see* Ulmer Decl. III ¶¶ 9–12, only its Technical Security Division ("TSD") actually located responsive records, *see id.*, Ex. D, Decl. of Sharla Gibson ¶ 10 [Dkt. # 72-3] ("Gibson Decl."); Mills Decl. ¶ 27. TSD was described as a "subdivision within the Secret Service's Office of Protective Research . . . responsible for providing all aspects of technical security for the President and other Secret Service protectees, and for planning, designing, developing, and implementing the agency's technical security hazard detection systems and equipment, such as those used at the White House Complex and other protective sites." Mills Decl. ¶ 28; *see* Ulmer Decl. I ¶ 17; Gibson Decl. ¶ 2. The responsive records were found in TSD's Science and Technology Subdivision ("S&T"), which is "responsible for performing research and development and testing and evaluations of investigative and protective technologies." Gibson Decl. ¶ 4.

14

The Secret Service's supporting declarations demonstrate that the Secret Service "is a protective law enforcement and security agency operating under the provisions of Title 18, United States Code, section 3056." Ulmer Decl. I ¶ 43; *see* Mills Decl. ¶ 29. "Through its research and other activities, the TSD [not only] helps the Secret Service to discharge its statutory mission under 18 U.S.C. § 3056 to keep the President and others safe from harm [but also] assists the Secret Service in preventing violations of federal criminal law." Mills Decl. ¶ 29. To this end, S&T personnel "compile information and research to understand the capabilities of . . . weapons and defense systems [to] determine what technologies may be deployed by third parties to potentially harm Secret Service protectees." *Id.* ¶ 28; *see* Gibson Decl. ¶ 4.

The responsive records "consisted of e-mails between S&T personnel and vendors of the types of systems that were the subject of the plaintiff's FOIA request, brochures of the vendors' systems, research papers, journals, and articles concerning these systems, and internal documents outlining S&T research interests." Gibson Decl. ¶ 10. Insofar as the records "were compiled by S&T in the course of its research, testing, and evaluations of technologies that could be used to protect the safety of the President and other Secret Service protectees," the declarant asserts that the records "meet the [E]xemption 7 threshold requirement." Mills Decl. ¶ 32.

### b. *National Institute of Justice*

The National Institute of Justice ("NIJ") is described as "the research, development and evaluation agency of the U.S. Department of Justice . . . dedicated to researching crime control and justice issues." Lee Decl. I ¶ 4. According to its declarant, NIJ "provides

objective, independent, evidence-based knowledge and tools to meet the challenges of crime and justice, particularly at the state and local levels." *Id.* It also "has the responsibility to pursue new law enforcement technology," and, similarly, "identifies, develops, and evaluates new or improved devices that will minimize the risk of death and injury to law enforcement officer[s,] suspects, prisoners, and the general public." Lee Decl. II ¶ 8. The responsive records at issue in this case consist of "information . . . compiled by OJP in connection with its research into less lethal weapons technology," including portions of a "power point presentation [on] less lethal weapons technology research by Raytheon [and information about] a type of directed energy device." *Id.*

Although plaintiff does not dispute the Secret Service's status as a law enforcement agency, he asserts that, "[w]hen a law enforcement agency acts outside its investigatory powers, . . . it is precluded from using any Exemptions under (b)(7) to shield its activities." Pl.'s Opp'n 21. Plaintiff fails to identify any actions outside of the Secret Service's investigatory powers, and he makes no argument to rebut the presumption that the Secret Service's declarations are submitted in good faith. Nor does plaintiff put forward any argument regarding the OJP/NIJ's nexus with the law enforcement requirement of Exemption 7. To the contrary, the declarations demonstrate that the relevant records were compiled for law enforcement purposes, and the records therefore fall within the scope of Exemption 7.

### ii. *Exemption 7(C)*

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal

privacy." 5 U.S.C. § 552 (b)(7)(C). "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the Court] 'must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.'" *Am. Civil Liberties Union*, 655 F.3d at 6 (alteration in original) (quoting *Reporters Comm.*, 489 U.S. at 776). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763–65, and individuals have a "substantial interest in ensuring that their relationship to [law enforcement] investigations remains secret." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011). When balancing the private interest against the public interest in disclosure, "the only cognizable public interest under FOIA is 'the citizens' right to be informed about what their government is up to.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 543 (D.C. Cir. 2014) (quoting *Reporters Comm.*, 489 U.S. at 773). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be "a significant one, more specific than having the information for its own sake." *Roth*, 642 F.3d at 1175.

The Secret Service relied on Exemption 7(C) to withhold "the names and phone numbers of individuals employed by entities outside of the Secret Service who provide security advice and information on potential security threats, and, at times, security equipment to the Secret Service and other government entities," as well as "[t]he names and telephone numbers of law enforcement personnel." Ulmer Decl. I ¶ 48. The declarant states that these individuals' privacy interests outweigh any public interest in disclosure.

*See id.* ¶¶ 49–50. If these individuals' identities were "placed in the public domain[, disclosure] could cause [them] a personal risk due to their connection with the Secret Service and other government entities." *Id.* ¶ 49. For example, the declarant explains that "[t]hose who are seeking to harm a Secret Service protectee or penetrate a Secret Service protected facility could seek to use these individuals to gain information regarding the security procedures in place around these [protectees] and facilities." *Id.* He further explains that these individuals "are working individuals, members of the general public, whose affiliation and information on security systems should be shielded from public view." *Id.*

The Secret Service also withholds "the identities and telephone numbers of law enforcement personnel" under Exemption 7(C). *Id.* ¶ 50. According to the declarant, disclosure of their identities "could result in . . . personal harassment . . . and, by extension, a diminishment of [their] ability . . . to perform their duties." *Id.* He further explains that "the performance of law enforcement duties often entails serious intrusions in to the lives of others, which creates resentment and sometimes a desire for retaliation." *Id.* "As such, the Secret Service recognizes that the release of the names and telephone numbers of law enforcement personnel [not only] could facilitate such retaliation," but also "could subject law enforcement personnel to unofficial questioning regarding the security measures in place around Secret Service protectees and Secret Service protected facilities." *Id.* This rationale would apply with respect to the withholding of "internal [email] addresses that include the names of agency personnel." Mills Decl. ¶¶ 6, 8.

From one page of the Raytheon records, the Secret Service invoked Exemption 6 in conjunction with Exemption 7(C) to withhold "the name of a Raytheon employee." *Id.* ¶ 10.[4] From the S&T records, the Secret Service withheld under Exemption 7(C) the "names and phone numbers of governmental and non-government personnel." *Id.* ¶ 32. Lastly, from the records originating from Kirtland Air Force Base, the Secret Service "redact[ed] the names of Secret Service personnel from approximately seven out of the nine email messages . . . concern[ing] directed energy technology research information that was received by TSD from Kirtland personnel." *Id.* ¶ 33.

The District of Columbia Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Safecard*, 926 F.2d at 1206. Plaintiff's sole objection to the agencies' reliance on Exemption 7(C) again alludes to "law-enforcement agency acts outside of its investigatory powers[.]" Pl.'s Opp'n 21. He asserts—without support—that "the agency's misconduct . . . make[s] it impossible for the agency to rely on the cited exemption[] to shield the requested records from disclosure." *Id.* at 22. The Court concludes that the withholding of the identities of third parties mentioned in these law enforcement records is proper. Because defendant has not submitted a declaration to explain the decision of the United

---

[4] Where, as here, the Secret Service invokes two exemptions and demonstrates that the same information is protected under FOIA Exemption 7(C) alone, the Court need not consider FOIA Exemption 6 separately. *See Roth*, 642 F.3d at 1173.

States Air Force to withhold information under Exemption 7(C), however, *see* Ulmer Decl.

II, Ex. C, Letter from Craig W. Ulmer, Special Agent In Charge, FOIA & Privacy Act

Branch, Secret Service, to Plaintiff (Sept. 2, 2008), at 2, defendant's motion will be denied

in part without prejudice.

### iii. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records that "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or

would disclose guidelines for law enforcement investigations or prosecutions if such

disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C.

§ 552(b)(7)(E). Under Exemption 7(E), the agencies have the burden of showing that

production of such records or information would reasonably lead to circumvention of laws

or regulations. *Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016); *see,*

*e.g.*, *Morley v. Cent. Intelligence Agency*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006)

(approving the withholding of information pertaining to security clearances and

background investigations on the ground that "disclosure of CIA security clearance and

investigatory processes would risk circumvention of those processes in the future"), *rev'd*

*on other grounds*, 508 F.3d 1108 (D.C. Cir. 2007).

Citing Exemption 7(E) in conjunction with Exemption 4, the Secret Service

withheld two pages of the Raytheon records that "provide a detailed description of the

different types of Raytheon directed energy weapons possessed by various government

entities . . . and lists the specific capabilities of several of these weapons." Mills Decl. ¶

34(a). This information had been "compiled . . . in connection with [S&T's] duties to

research weapons and protective technologies to evaluate how they could be used against Secret Service protectees." *Id.*

From four pages of S&T records, the Secret Service withheld a portion of "an internal . . . briefing packet that describes various protective technologies for the Secret Service to consider in fiscal year 2010" and that "detail[s] perceived 'capability gaps' in the agency's protective technologies that needed to be resolved." *Id.* ¶ 34(b). In addition, it withheld a "paragraph from an intra-agency email message" that "discusses a new type of security technology . . . identified as a Long Range Acoustical Device" and that "details [its] specific operational capabilities." *Id.* ¶ 34(c). Lastly, the Secret Service withheld in full a 97-page "technical proposal regarding a countermeasures study and portions of other documents" under Exemption 7(E). Ulmer Decl. I ¶ 46. "In the . . . proposal, the research laboratory offers to conduct an exhaustive study of the air defense systems in the Washington, D.C. metropolitan area, and to recommend potential defensive technologies to bolster the defense system's effectiveness." Mills Decl. ¶ 34(d).

The declarants state that these documents contain "specific information on security systems used by the Secret Service" in protecting the President and other designated individuals, and "information regarding technologies which could potentially thwart these measures." Ulmer Decl. I ¶ 46; *see* Mills Decl. ¶ 34(d) (stating that the proposal includes "a detailed overview of various air defense system technologies"). The declarants further assert that "[p]ublic disclosure of information regarding the details of these security systems and technologies could nullify the future effectiveness of these protective measures" and thus "impede the Secret Service's efforts to protect the President, the Vice

21

President, and other . . . protectees in the future." Ulmer Decl. I ¶ 46; *see* Mills Decl. ¶¶ 34–35.

Similarly, the OJP/NIJ redacted "law enforcement information, the disclosure of which would disclose guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk the circumvention of law." Lee Decl. I ¶ 6. Specifically, NIJ "partially redacted four pages of a presentation . . . to protect certain law enforcement-related information from disclosure." Lee Decl. II ¶ 7. According to the declarant, the information "was compiled by OJP in connection with its research into less lethal weapons technology," as is consistent with the "OJP, NIJ . . . responsibility to pursue new law enforcement technology." *Id.* ¶ 8. "Some of the partially withheld information . . . pertains to less lethal weapons technology research by Raytheon" and "outlined a type of directed energy device." *Id.*

Again, plaintiff fails to rebut defendant's showing, *see* Pl.'s Opp'n 21–22, and based on the supporting declarations, the Court concludes that reliance on Exemption 7(E) is appropriate.

  *iv. Exemption 7(F)*

FOIA Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "That language is very broad" and "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014).

Under Exemption 7(F), the Secret Service withholds "information regarding the security measures and related technologies used to protect Secret Service protectees." Ulmer Decl. I ¶ 52. According to the declarant, "release [of] information regarding the security procedures in place to protect Secret Service protectees and possible technologies to thwart these procedures could endanger the lives of those protectees as well as law enforcement personnel who are charged with their protection." *Id.* He concludes that "the security measures in place and technologies that could potentially thwart [them]" are properly withheld. *Id.*

The Court notes that, for purposes of Exemption 7(F), "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 205. The Secret Service has satisfied that requirement by demonstrating that disclosure of the security-related information at issue could endanger the safety of its protectees. Its reliance on Exemption 7(F) is therefore proper.

**B.    Plaintiff's Motions**

Plaintiff's "Motion for Order Related to Agency's Misuse of FOIA (c)(1) Exclusion," *see* Pl.'s Opp'n 24, will be denied. The so-called "(c)(1) exclusion" applies only when "a request is made which involves access to records described in subsection (b)(7)(A)," 5 U.S.C. § 552(c)(1), that is, "records or information compiled for law enforcement purposes" if their release "could reasonably be expected to interfere with enforcement proceedings," *id.* § 552(b)(7)(A). Defendant does not invoke the (c)(1) exclusion, however, and the Court accordingly denies plaintiff's motion.

23

The Court will deny plaintiff's Motion for Reconsideration which is premised upon dismissal of "parts of this case prior to dramatic changes in controlling case law." Pl.'s Opp'n 25. Plaintiff does not identify which "parts of this case" have been improperly dismissed, and the Court identifies no basis for reconsideration of the February 15, 2013 Memorandum Opinion and Order [Dkt. # 87].

Because it was previously decided that the Secret Service's search for records responsive to plaintiff's FOIA request was adequate, *see Friedman*, 923 F. Supp. 2d at 275, there is no need to address plaintiff's arguments to the contrary, *see* Pl.'s Opp'n 18–19. Nor does the Court entertain plaintiff's challenges to the adequacy of the supporting declarations, *see id.* at 18, as this, too, already has been decided, *see Friedman*, 923 F. Supp. 2d at 275. Nor does the Court find fault with the Secret Service's decisions to refer records to the agencies where they originated, notwithstanding plaintiff's assertion that "these other agencies are only acting upon referrals from an agency acting in bad faith," Pl.'s Opp'n 22.

Lastly, the Court denies plaintiff's request for *in camera* review of records withheld under Exemption 1, *see id.* at 21, and *in camera* review of all other agency records, *see id.* at 24–25. "FOIA provides district courts the option to conduct *in camera* review, but 'it by no means compels the exercise of that option.'" *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008)). Only where the court believes *in camera* review is needed "to make a responsible de novo determination on the claims of exception" is such review appropriate. *Id.* at 870 (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1997)). Here, plaintiff

proffers only his unsupported assertions of "[d]efendant's clear and unlawful use of perjury in its attempt it from being embarrassed and its personnel prosecuted." Pl.'s Opp'n 24. This is not a case where the agencies' affidavits are insufficiently detailed, where such affidavits are contradicted in the record, or where there is evidence of agency bad faith. Indeed, "the agencies' affidavits standing alone were sufficiently specific to place the challenged documents within the exemption categories," rendering *in camera* review unnecessary. *Larson*, 565 F.3d at 870.

## CONCLUSION

For the reasons discussed above, Defendant's Second Renewed Motion for Summary Judgment [Dkt. # 96] is GRANTED IN PART. The Secret Service properly withheld information under Exemptions 4 (including information redacted from the Raytheon records), 6, 7(C) (including information redacted from the Raytheon records), 7(E), and 7(F); NPPD properly withheld information under Exemption 6; and NIJ properly withheld information under Exemptions 6 and 7(E). Because defendant has not produced supporting declarations to explain the Air Force's reliance on Exemptions 2 and 7(C), the motion is DENIED IN PART without prejudice. Plaintiff's Motion for Order Related to the Defendant's Misuse of the (c)(1) Exclusion, Motion for *In Camera* Review of Records, and Motion for Reconsideration [Dkt. # 106] are DENIED.

_____
RICHARD J. LEON
United States District Judge